USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1373 UNITED STATES OF AMERICA, Appellant, v. LUIS A. COLON-OSORIO, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich and Coffin, Senior Circuit Judges. _____________________ ____________________ Kathleen A. Felton, Attorney, Department of Justice, with whom ___________________ Daniel F. Lopez-Romo, United States Attorney, and Miguel A. Pereira, ____________________ __________________ Assistant United States Attorney, were on brief for appellant. Linda Backiel for appellee. _____________ ____________________ November 30, 1993 ____________________ COFFIN, Senior Circuit Judge. On December 9, 1992, Luis _____________________ Colon Osorio was convicted of two counts of failure to appear as ordered before a court in Connecticut. A month later, on the same day that Colon Osorio received a sentence calculated to effect his immediate release from prison, the government unsealed a new criminal complaint charging him as a fugitive in possession of firearms. The district court dismissed these charges on double jeopardy grounds because the government's proof of fugitive status would necessarily rely on the same conduct for which Colon Osorio had been punished in the first prosecution. The case on which the district court primarily relied, Grady v. _____ Corbin, 110 S. Ct. 2084 (1990), has since been overruled. See ______ ___ United States v. Dixon, 113 S. Ct. 2849 (1993). Under the ______________ _____ Supreme Court's current formulation of double jeopardy jurisprudence, we are obliged to reverse. I. Facts _____ Luis Colon Osorio is a member of Los Macheteros, an organization dedicated to the independence of Puerto Rico. In 1985, along with seventeen other members of Los Macheteros, and two non-members, Colon Osorio was arrested in Puerto Rico and charged with aiding and abetting and conspiring in the planning and execution of a 1983 robbery of $7 million from a Wells Fargo depository in West Hartford, Connecticut.1 ____________________ 1For further factual background on the Wells Fargo robbery case, as well as a detailed analysis of the legal issues the case involved, see United States v. Maldonado-Rivera, 922 F.2d 934 (2d _____________ ________________ Cir. 1990). -2- Colon Osorio was detained without bail for seventeen months, and then ordered released to the District of Puerto Rico in December 1986. On September 24, 1990, Colon Osorio issued a communique stating that he was "going underground to rejoin the clandestine struggle" for the independence of Puerto Rico. A criminal complaint alleging violation of conditions of pre-trial release was filed the following day, and an arrest warrant issued. A Connecticut district court ordered Colon Osorio to appear for a hearing on the government's motion to forfeit his bond on December 17, 1990. He failed to appear. The same court ordered him to appear for jury selection in the criminal trial on January 13, 1992. He failed to appear a second time. On March 17, 1992, Colon Osorio was arrested in Puerto Rico, allegedly in possession of a semi-automatic pistol, ammunition, and a live hand grenade, as well as cocaine and marijuana. He was transferred to Connecticut and charged with two counts of failure to appear following release on bail, pursuant to 18 U.S.C. 3146(a).2 A jury convicted him of these charges on December 9, 1992 and, on January 29, 1993, he was sentenced to 318 days imprisonment. In the interim, between conviction and sentencing, two events occurred. First, on January 19, 1993, the government dismissed the indictments against Colon Osorio stemming from the ____________________ 2This statute provides: "Whoever, having been released under this chapter knowingly . . . fails to appear before a court as required by conditions of release . . . shall be punished as provided in subsection (b) of this section." -3- Wells Fargo bank robbery case. Second, on the day before his sentencing, the United States brought a criminal complaint in Puerto Rico, unsealed the next day, charging him with possession of the firearms and drugs allegedly confiscated at the time of his arrest in Puerto Rico. The subsequent indictment charged Colon Osorio with three counts of possession of a firearm as a fugitive from justice, in violation of 18 U.S.C. 922(g)(2),3 and two counts of possession of a controlled substance, in violation of 21 U.S.C. 844(a). The district court dismissed the fugitive-in-possession charges on double jeopardy grounds. The court first determined that 18 U.S.C. 3146(a)(1), the failure to appear provision, was a "species of lesser-included offense" of 18 U.S.C. 922(g)(2), making the second prosecution an impermissible repetition of the first one. Alternatively, the court found that the second prosecution was barred by Grady v. Corbin, 110 S. Ct. 2084 _____ ______ (1990), in which the Supreme Court held that to establish an essential element of an offense charged in a second prosecution, the government could not rely on conduct for which the defendant already had been prosecuted. The district court concluded that the government would have to rely on the conduct proving Colon ____________________ 3This statute provides: "It shall be unlawful for any person . . . who is a fugitive from justice . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." -4- Osorios's failure to appear in order to establish the flight element of the section 922(g)(2) offense.4 On appeal, the government contends that the Supreme Court's recent opinion in United States v. Dixon, 113 S. Ct. 2849 (1993), _____________ _____ controls the resolution of this case. It points out that the Dixon Court flatly overruled Grady v. Corbin, thus undermining _____ _____ ______ one of the district court's bases for finding a double jeopardy bar to the second prosecution. Additionally, the government argues that applying the traditional double jeopardy analysis set forth in Blockburger v. United States, 284 U.S. 299 (1932), and ___________ _____________ reaffirmed in Dixon, compels the conclusion that there are two _____ separate offenses, permitting the fugitive-in-possession prosecution to proceed. Colon Osorio recognizes that Grady v. Corbin no longer _____ ______ supports his claim of double jeopardy, but his reading of Dixon _____ otherwise differs from the government's. He claims that Dixon _____ bolsters the district court's conclusion that his bail jumping offense is completely included in the fugitive-in-possession ____________________ 4The district court also noted a potential venue problem if a single trial had been sought for both violations. Opinion at 9, n.10. The government notes that an exception to the double jeopardy bar on subsequent prosecutions may lie where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain the charge have not yet been discovered or occurred, despite the exercise of due diligence, see Brown v. Ohio, 432 U.S. 161, 169, n.7 (1977), and ___ _____ ____ urges us to extend this exception to embrace legal impediments as well, such as where venue restrictions prevent the government from joining all charges in a single district. However, the government cites no authority which supports this proposition. Because we find no double jeopardy bar to the second prosecution under section 922(g)(2), we need not reach this issue. -5- charge, and that his prosecution for that charge is therefore barred on double jeopardy grounds. Whether principles of double jeopardy bar a subsequent prosecution is an issue for plenary review. United States v. _____________ Aguilar-Avanceta, 957 F.2d 18, 21 (1st Cir. 1992). ________________ II. Double Jeopardy Law ___________________ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend V. Under this clause, a defendant is protected from both successive prosecutions and multiple punishments for the same criminal offense. See North Carolina v. Pearce, 395 U.S. 711 (1969); ___ ______________ ______ United States v. Rivera Martinez, 931 F.2d 148, 152 (1st Cir. _____________ _______________ 1991). In Blockburger v. United States, 284 U.S. 299 (1932), the ___________ _____________ Supreme Court ruled that punishment for two statutory offenses arising out of the same criminal act or transaction does not violate double jeopardy if "each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. ___________ The Blockburger test focuses on the statutory elements of each ___________ offense. "If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a ___________ substantial overlap in the proof offered to establish the crimes." Ianelli v. United States, 420 U.S. 770, 785 n.17 _______ _____________ (1975); see also United States v. Felix, 112 S. Ct. 1377, 1382 ___ ____ ______________ _____ (1992). -6- In Brown v. Ohio, 432 U.S. 161, 166-67 (1977), the Supreme _____ ____ Court acknowledged that the Blockburger test was not the only ___________ standard used to determine whether successive prosecutions were the "same offence" for double jeopardy purposes. The Brown Court _____ noted that in some circumstances where a second prosecution would require relitigation of factual issues already resolved by the first, successive prosecutions were barred, notwithstanding the fact that the two offenses involved were sufficiently different to permit the imposition of consecutive sentences under Blockburger. The Court pointed to Ashe v. Swenson, 397 U.S. 436 ___________ ____ _______ (1976), and In re Nielsen, 131 U.S. 176 (1889), to support this ______________ proposition. In Ashe, the Court ruled that principles of ____ collateral estoppel embodied in the Double Jeopardy Clause barred a second prosecution for robbery of one person when the defendant had been acquitted of robbery of another person in the same incident. In In re Nielsen, the Court held that a conviction for _____________ cohabiting with two wives over a two and one-half year period barred a subsequent prosecution for adultery with one of the wives on the day following the end of that period. Although strict application of Blockburger would have permitted imposition ___________ of consecutive sentences, in both cases, the Court found that these separate offenses were the "same" for double jeopardy purposes, and barred the second prosecutions. Brown, 432 U.S. at _____ 166-67 n.6. In 1990, in Grady v. Corbin, 110 S. Ct. at 2084, the Court, _____ ______ reviewing over a century of double jeopardy jurisprudence, looked -7- to Ashe and In re Nielsen as evidence that double jeopardy ____ ______________ analysis must extend beyond Blockburger. The Grady Court ___________ _____ recognized a distinction between multiple punishment and successive prosecution cases, noting that successive prosecutions raised concerns beyond punishment which justified a more robust standard by which to review double jeopardy for these cases. The Grady majority asserted that, in cases of multiple _____ punishment, the purpose of the Double Jeopardy Clause was to prevent the sentencing court from prescribing a greater punishment than that authorized by the legislature. 110 S. Ct at 2091. In that context, Blockburger functioned as a "`rule of ___________ statutory construction,' a guide to determining whether the legislature intended multiple punishments." Id. at 2091 (quoting ___ Missouri v. Hunter, 459 U.S. 359, 366 (1983)). By contrast, ________ ______ successive prosecutions raised concerns beyond excessive punishment, such as questions of finality, harassment, and the risk of erroneous conviction. In this context, the Double Jeopardy Clause also served as a check on the state's prosecutorial power, insuring that the state, "with all its resources and power," did not misuse its authority over individual defendants. Id. (quoting Green v. United States, 355 ___ _____ ______________ U.S. 184, 187 (1957)). Under Grady, to determine whether the Double Jeopardy Clause _____ barred a subsequent prosecution, a court first applied the traditional Blockburger test. If the subsequent prosecution ___________ survived the Blockburger test, the court then determined whether ___________ -8- establishing an essential element of an offense charged in that prosecution would require the government to prove conduct that constitutes an offense for which the defendant already has been prosecuted. 110 S. Ct. at 2093. If so, the second prosecution was barred. Id. ___ In Dixon v. United States, 113 S. Ct. 2849 (1993), the Court _____ _____________ renounced Grady's "same conduct" test and affirmed that the _____ Blockburger analysis governs both multiple punishment and ___________ successive prosecution cases.5 Writing for a 5-4 majority, Justice Scalia, in Dixon, essentially adopted the reasoning of _____ his dissent in Grady to argue that Grady's "same conduct" rule _____ _____ lacked constitutional roots, and was wholly inconsistent with Supreme Court precedent and the common-law understanding of double jeopardy. 113 S. Ct. at 2860. In his view, the Grady _____ Court had overstated the limitations of the Double Jeopardy Clause, in practice embracing a requirement that would have all charges arising from a single criminal transaction tried in a single proceeding. Grady, 110 S. Ct. at 2102. The Court in _____ Dixon thus narrowed the scope of inquiry in successive _____ prosecution cases. III. Application of Dixon ____________________ Applying the Dixon/Blockburger "same elements" test to the _________________ facts of this case compels the conclusion that the defendant may be prosecuted for being a fugitive in possession of firearms ____________________ 5In the three years since Grady, the composition of the _____ Court changed, resulting in a shift in the majority view of the history and precedent underlying the Double Jeopardy Clause. -9- under 18 U.S.C. 922(g)(2) despite his earlier conviction under 18 U.S.C. 3146 for failure to appear. To secure a conviction under section 3146(a)(1), the government must prove that (1) the defendant has been released on bail pending trial, sentencing, or appeal; (2) the defendant was required to appear before a court; and (3) the defendant knowingly failed to appear. The fugitive- in-possession charge requires proof (1) that a defendant fled to avoid prosecution for a crime; (2) that he knowingly possessed a firearm; and (3) that the firearm was possessed in or affecting commerce. Each statute clearly requires proof of elements that the other does not. Under section 3146, for example, the government must prove that defendant was released on bail, and was required to appear before a court. These elements are not required under section 922(g), as a person may be a fugitive from justice without having been released on bail, and without being required to appear before a court. Section 922(g) requires that the defendant possess a firearm, which is not a required element for a violation of section 3146(a). Therefore, prosecution for these two offenses is not barred by Blockburger/Dixon. _________________ The district court made this same observation, but rejected the technical comparison of the statutes' elements as too cursory. The court found that this case was comparable to Harris ______ v. Oklahoma, 433 U.S. 682 (1977) (per curiam), where the Supreme ________ Court held that a prosecution for robbery with a firearm, following defendant's conviction for felony murder based on the -10- robbery, was barred by double jeopardy principles. The Supreme Court later explained this result by noting that, for double jeopardy purposes, it did not consider "the crime generally described as felony murder as a separate offense distinct from its various elements." Illinois v. Vitale, 447 U.S. 410, 420 ________ ______ (1980). Rather, robbery with a firearm was a "species of lesser- included offense" of the felony murder for which Harris already had been prosecuted. Id. ___ Relying on Harris, the district court found that, on the ______ specific facts of this case, section 3146(a)(1) was a "species of lesser-included offense" of section 922(g)(2). The court explained that in order to prosecute Colon Osorio for a violation of section 922(g)(2), the government must show that Colon Osorio was a fugitive from justice, which, in turn, required a showing that he fled to avoid prosecution. In this case, the government would rely on proof of the same conduct which comprised proof of his bail jumping offense under section 3146: that he was on bail for an indictment in Connecticut; that he was required to appear before a court; and that he failed to appear. Noting that these were all the "elements necessary in the previous prosecution for violations of section 3146(a)(1)," the district court held that section 3146 was a "species of lesser-included offense" of section 922(g)(2) and, therefore, that Blockburger barred the ___________ government from prosecuting Colon Osorio under this section. The district court's analogy lacks force in the aftermath of Dixon. In the first place, Harris' status is unclear. The _____ ______ -11- Supreme Court in Grady had pointed to Harris to support its _____ ______ argument that Blockburger was not the exclusive test to vindicate ___________ the Double Jeopardy Clause's protection against multiple prosecutions. Grady, 110 S. Ct. at 2092. The Dixon Court _____ _____ overruled this proposition, holding that both multiple prosecution and multiple punishment cases are to be assessed under the identical standard, Blockburger's "same elements" test. ___________ Dixon, 113 S. Ct. at 2856, 2860. A majority of the justices _____ criticized an interpretation of Harris which supports the ______ proposition that the Blockburger test is insufficient to ___________ determine whether a successive prosecution is barred, and that conduct, not merely statutory elements, must be the object of the double jeopardy inquiry. Id. at 2861. These same justices ___ disagreed, however, over Harris' application, leaving open the ______ possibility that a majority could still view Harris as providing ______ an exception to the Blockburger approach. See 113 S.Ct. at 2866- ___________ ___ 67 (Rehnquist, C.J., concurring and dissenting); id. at 2857 n.2 ___ (Scalia, J.).6 ____________________ 6Dixon involved the question of whether defendants who had _____ been prosecuted for criminal contempt of court for violating court orders subsequently could be tried for crimes arising out of the same conduct which was the subject of the contempt prosecution. While a majority of the Court joined to reaffirm Blockburger's application to successive prosecution cases, and to ___________ overrule Grady v. Corbin's "same conduct" test, there was _____ ______ significant disagreement among this same majority regarding the effect of this change. Chief Justice Rehnquist, in an opinion joined by Justices O'Connor and Thomas, focused his criticism on Justice Scalia's application of Harris. He contended that ______ Justice Scalia improperly invoked Harris. In looking to the ______ facts that had to be proven to show a violation of the specific court orders at issue, and not to the generic elements of the crime of contempt of court, Justice Scalia effectively -12- In any event, this case is distinguishable from Harris. In ______ Harris, the Court barred a second prosecution for the offense ______ that had been used to establish an element of the felony murder offense for which the defendant was convicted. By contrast, bail jumping is not an offense on which the government will rely to ___ establish Colon Osorio's fugitive status. The government merely will rely on the same conduct that the government proved to _______ establish Colon Osorio's bail jumping offense. Indeed, the district court's analysis is precisely what the Dixon Court rejected. Under Dixon, the fact that the government _____ _____ will attempt to prove that Colon Osorio was a fugitive by referring to the same conduct used to prove the elements of failure to appear does not offend the Double Jeopardy Clause. The same actions can constitute an offense under two distinct statutes and can be prosecuted separately under each statute as long as the statutes do not define a single offense within the meaning of Blockburger. United States v. White, 1 F.3d 13, 17 ___________ ______________ _____ (D.C. Cir. 1993); see also Blockburger, 284 U.S. at 304 (quoting ___ ____ ___________ Morey v. Commonwealth, 108 Mass. 433 (1871)). _____ ____________ The district court's decision therefore must be REVERSED. _________________________________________________________ ____________________ resurrected the Grady analysis that the Court had just rejected. _____ Dixon, 113 S. Ct. at 2866-67 (Rehnquist, C.J., concurring and _____ dissenting). See also id. at 2857 n.2 (Scalia, J., criticizing ___ ____ ___ Chief Justice Rehnquist's interpretation of his analysis of Harris). Therefore, whether Harris still provides an exception ______ ______ to Blockburger remains unclear post-Dixon. ___________ _____ -13-